# 22-20422

In The

# United States Court Of Appeals
## For The Fifth Circuit

**ECHO WARE,**

*Plaintiff – Appellant*,

v.

**AUTOZONERS, L.L.C.,**

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON: 4:21-CV-67
THE HONORABLE SIM T. LAKE, III, U.S. DISTRICT JUDGE

_____

## BRIEF OF APPELLANT

_____

**Connor Throckmorton**
**THROCKMORTON LAW FIRM PLLC**
**5850 San Felipe Street**
**Suite 500**
**Houston, Texas  77057**
**(713) 400-6173**
connor@throckmortonlaw.com

*Counsel for Appellant*

GibsonMOORE APPELLATE SERVICES, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| AutoZoners, LLC | Tracy Kern of Jones Walker LLP New Orleans, Louisiana<br><br>Jason Culotta of Jones Walker LLP New Orleans, Louisiana |
|  |  |

| Appellants: | Counsel for Appellants: |
|---|---|
| Echo Ware | Connor Throckmorton of Throckmorton Law Firm PLLC Houston, Texas |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| AutoZone, Inc. | Tracy Kern of Jones Walker LLP New Orleans, Louisiana<br><br>Jason Culotta of Jones Walker LLP New Orleans, Louisiana |

S/Connor Throckmorton
Attorney of record for Appellant

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument on account of the nature of the legal error challenged herein.

# TABLE OF CONTENTS

**Page:**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF CONTENTS................................................................................ iii

TABLE OF AUTHORITIES .......................................................................... v

I.      JURISDICTIONAL STATEMENT ................................................................1

        A.      District Court's Jurisdiction ................................................1

        B.      Court of Appeals' Jurisdiction ............................................1

        C.      Timeliness of Appeal .............................................................1

II.     STATEMENT OF THE ISSUES ....................................................2

III.    STATEMENT OF THE CASE ........................................................2

        STATEMENT OF FACTS...........................................................4

        A.      Echo   Ware   Begins   Working   at   an   AutoZone   Store
                That Upholds Questionable Morals .....................................4

        B.      Ware Borrows And Returns A Battery To Get To Work After
                Witnessing A Male Employee Steal Without Repercussion.................7

        C.      The Case of The Missing Paycheck and The Not Missing Battery .......8

        D.      Echo  Ware  is  Terminated  for  "Causing  a  Monetary  Loss"  to
                AutoZone...................................................................9

IV.     SUMMARY OF THE ARGUMENT ............................................13

V.      ARGUMENT..........................................................................15

        A.      Standard of Review .............................................................15

B.     Ware's Claim Title VII Gender Discrimination ............................... 16

    1.     "I don't like other females working in my store." .................... 16

    2.     Anderson's Leverage Over Ware's Termination Is A Jury Question ................................................................................... 18

    3.     Kevin Williams Was a Proper Comparator to Show Disparate Treatment ................................................................ 20

C.     Ware Has Presented A Genuine Dispute of Material Fact as to Pretext under Title VII and the FLSA ................................................. 22

    1.     A Violation of Company Policy Is Not Automatically "Worthy of Credence" .............................................................. 25

    2.     Evidence of AutoZone's Lack of Credibility .......................... 25

       a.     Derrick Martin Lied in His Sworn Declaration .............. 26

       b.     AutoZone's Corporate Representative Laura Berry Also Lied Her Deposition ............................................... 27

       c.     Rosalind Anderson Lied In Her Deposition .................. 27

    3.     A similarly situated employee violated the same work rule but without being punished ...................................................... 28

    4.     Timing is everything .............................................................. 29

    5.     A Reasonable Juror Could Definitely Infer Pretext for Title VII Discrimination and FLSA Retaliation ...................... 30

VI.     CONCLUSION ................................................................................... 32

CERTIFICATE OF FILING AND SERVICE ....................................... 33

CERTIFICATE OF COMPLIANCE ....................................................... 34

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Alviar v. Macy's, Inc.*,
    784 F. App'x 213 (5th Cir. 2019) ...........................................................20, 31

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................15

*Auguster v. Vermilion Par. Sch. Bd.*,
    249 F.3d 400 (5th Cir. 2001) ............................................................ 23

*Brown v. Wal-Mart Stores E., L.P.*,
    969 F.3d 571 (5th Cir. 2020), *as revised* (Aug. 14, 2020) ...........................25

*Chambers v. Sodexo, Inc.*,
    510 F. App'x 336 (5th Cir. 2013) ....................................................17

*Fortner Enterprises, Inc. v. U.S. Steel Corporation*,
    394 U.S. 495 (1969)..............................................................................16

*Gee v. Principi*,
    289 F.3d 342 (5th Cir. 2002) ...........................................................18

*Gorman v. Verizon Wireless Tex., L.L.C.*,
    753 F.3d 165 (5th Cir. 2014) ...........................................................18

*Green v. Armstrong Rubber Co.*,
    612 F.2d 967 (5th Cir. 1980) ...........................................................29

*Haun v. Ideal Indus., Inc.*,
    81 F.3d 541 (5th Cir. 1996) ............................................................17

*Hoffman v. Baylor Health Care Sys.*,
    597 F. App'x 231 (5th Cir. 2015) ..................................................22

*Honore v. Douglas*,
    833 F.2d 565 (5th Cir. 1987) ...........................................................16

v

*Juino v. Livingston Par. Fire Dist. No. 5*,
 717 F.3d 431 (5th Cir. 2013) .........................................................................15

*Kebiro v. Denton State Sch.*,
 24 F.3d 240 (5th Cir. 1994) ...........................................................................28

*Laxton v. Gap, Inc.*,
 333 F.3d 572 (5th Cir. 2003) .......................................................22, 23, 24, 25

*Lee v. Kan. City S. Ry. Co.*,
 574 F.3d 253 (5th Cir. 2009) .........................................................................21

*Long v. Eastfield College*,
 88 F.3d 300 (5th Cir. 1996) ...........................................................................18

*Owens v. Circassia Pharms., Inc.*,
 33 F.4th 814 (5th Cir. 2022) .................................................................... 31-32

*Palasota v. Haggar Clothing Co.*,
 342 F.3d 569 (5th Cir. 2003) ...................................................................16, 19

*Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*,
 395 F.3d 206 (5th Cir. 2004) .........................................................................22

*Portis v. First Nat'l Bank*,
 34 F.3d 325 (5th Cir. 1994) ...........................................................................17

*Price v. Fed. Express Corp.*,
 283 F.3d 715 (5th Cir. 2002) ......................................................................... 22

*Ramirez v. City of Odessa, Texas*,
 38 F.3d 570 (5th Cir. 1994) ...........................................................................25

*Reeves v. Sanderson Plumbing Prods., Inc.*,
 530 U.S. 133 (2000)........................................................................................23

*Rios v. Rossotti*,
 252 F.3d 375 (5th Cir. 2001) .........................................................................18

*Rogers v. Missouri Pacific R. Co.*,
 352 U.S. 500 (1957)........................................................................................14

*Russell v. McKinney Hosp. Venture,*
    235 F.3d 219 (5th Cir. 2001) ....................................................... 18, 19

*Sandstad v. CB Richard Ellis, Inc.,*
    309 F.3d 893 (5th Cir. 2002) ....................................................... 23, 25

*Staub v. Proctor Hosp.,*
    562 U.S. 411 (2011) .......................................................................... 18

*Turco v. Hoechst Celanese Chemical Group, Inc.,*
    906 F. Supp. 1120 (S.D. Tex. 1995) *aff'd sub nom,*
    101 F.3d 1090 (5th Cir. 1996) ........................................................... 16

*Turner v. Kan. City S. Ry. Co.,*
    675 F.3d 887 (5th Cir. 2012) ............................................................ 22

*Vaughn v. Woodforest Bank,*
    665 F.3d 632 (5th Cir. 2011) ....................................................... 23, 31

*Wallace v. Methodist Hosp. Sys.,*
    271 F.3d 212 (5th Cir. 2001) ............................................................ 23

*Wallace v. Seton Fam. of Hosps.,*
    777 F. App'x 83 (5th Cir. 2019) ........................................................ 22

*Watkins v. Tregre,*
    997 F.3d 275 (5th Cir. 2021) .................................................. 29, 30, 32

*Zamora v. City of Houston,*
    798 F.3d 326 (5th Cir. 2015) ............................................................ 19

**Statutes:**

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 1331 ..................................................................................... 1

29 U.S.C. § 215(a)(3) ..................................................................... *passim*

42 U.S.C. § 2000e, *et seq.* ........................................................... *passim*

**Rules:**

FED. R. APP. P. 4(A)(4) ........................................................................1

FED. R. CIV. P. 30(B)(6) ......................................................................27

FED. R. CIV. P. 56(A) ..........................................................................15

FED. R. CIV. P. 59(E) .......................................................................1, 3

# I.    JURISDICTIONAL STATEMENT

## A.    District Court's Jurisdiction

The United States District Court for the Southern District of Texas (sometimes referred to herein as the "district court") had original federal question jurisdiction under 28 U.S.C. § 1331 because the claims arise under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

## B.    Court of Appeals' Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because Vandenberg appeals the final judgment, dated June 17, 2022, from the United States District Court for the Southern District of Texas.

## C.    Timeliness of Appeal

The district court's final judgment granting summary judgment was entered on June 17, 2022, in accordance with its memorandum opinion and order granting Defendant's motion for summary judgment.  Thereafter, Plaintiff, timely filed a motion to alter or amend the final judgment on June 27, 2022, pursuant to Federal Rule of Civil Procedure 59(e).  The district court entered a memorandum opinion and order disposing of this last remaining motion and the parties' claims on July 20, 2022.  Appellant timely appealed the final judgment by filing the Notice of Appeal on August 12, 2022, pursuant to Federal Rule of Appellate Procedure 4(a)(4).

## II.    STATEMENT OF THE ISSUES

1.    Whether the district court erred in granting summary judgment on Appellant's Title VII sex discrimination claim and FLSA retaliation claim by disregarding evidence of pretext and genuine issues of material fact as to the legality of Appellant's discharge by Appellee.

## III.    STATEMENT OF THE CASE

Appellant, Echo Ware ("Ware"), filed an original complaint in district court on January 8, 2021, bringing claims of sex discrimination under Title VII and retaliation under the FLSA against Appellee, AutoZoners, LLC ("AutoZone"), and Autozone, Inc.[1]  AutoZone, Inc. is the ultimate parent corporation of AutoZoners, LLC.[2]  On July 26, 2021, the parties filed a joint motion to dismiss AutoZone, Inc. without prejudice,[3] which the district court granted that same day.[4]

AutoZone filed a motion for summary judgment on November 19, 2021.[5] Ware filed a response to AutoZone's motion for summary judgment on December 14, 2021.[6]  Before doing so, however, Ware filed her own motion for summary judgment and/or judgment on the pleadings for AutoZone's affirmative defenses on November 21, 2021, pointing out the lack of evidence of AutoZone's affirmative

---

[1] ROA.9-14.
[2] ROA.39.
[3] ROA.51-53.
[4] ROA.55.
[5] ROA.60-93.
[6] ROA.464-490.

defenses, including after-acquired evidence, mixed-motives, and failure to mitigate damages.[7] Ware also filed objections with a motion to strike the summary judgment evidence proffered by AutoZone on November 30, 2021.[8]

On June 17, 2022, the district court granted AutoZone's summary judgment and denied Ware's motion for summary judgment, motion to strike AutoZone's summary judgment evidence, and the parties' motions in limine.[9] Even though the district court correctly determined that Ware established a prima facie case of FLSA retaliation,[10] the Court erred by finding Ware did not establish a prima facie case of sex discrimination, reasoning that there was no direct evidence of discrimination by someone with authority over Ware and no evidence of disparate treatment.[11] The district court also erred by determining that Ware could not show pretext under Title VII or the FLSA.[12] On July 27, 2022, Ware filed a motion to alter or amend final judgment under Rule 59(e) of the Federal Rules of Civil Procedure, asking the district court to reconsider its rulings and findings of fact.[13] The district court denied Ware's Rule 59(e) motion and disposed of all outstanding claims on July 20, 2022.[14] Ware appeals the district court's grant of AutoZone's motion for summary judgment.

---

[7] ROA.277-292.
[8] ROA.347-354.
[9] ROA.1390-1429.
[10] ROA.1423-1424.
[11] ROA.1411-1419.
[12] ROA.1419-1421; ROA.1427.
[13] ROA.1436-1440.
[14] ROA.1454-1460.

## STATEMENT OF FACTS

### A.     Echo Ware Begins Working at an AutoZone Store
That Upholds Questionable Morals.

On January 4, 2020, Echo Ware began working as a parts sales manager at AutoZone Store 5892 in Houston's Greater Fifth Ward.[15]  Although Ware was hired by a man named John Flores,[16] her immediate supervisor was store manager Rosalind Anderson.[17]  Despite the presumption that members of a protected class would not discriminate against their own kind,[18] Anderson made it very clear to Ware on her first day of work that "she did not want other females in her store."[19] The other part sales manager who started working at Store 5892 before Ware was Kevin Williams, a male who shared the same job title, job duties, and supervisor as Ware.[20]  Given the fact that her new boss disliked other females in the store and had the audacity to say it to her face, things did not bode well for Ware.

In the short time AutoZone employed Ware, she personally witnessed the other part sales manager, Kevin Williams, stealing merchandise from AutoZone without repercussion.[21]  Ware reported Kevin Williams's conduct to Anderson,[22]

---

[15] ROA.239-240.
[16] ROA.612.
[17] ROA.766.
[18] *See* ROA.1421.
[19] ROA.605; ROA.622-623.
[20] ROA.506-507; ROA.766.
[21] ROA.412.
[22] ROA.413.

who also suspected Kevin Williams of stealing.[23]  But despite Anderson's reasonable suspicions and receiving Ware's report that she personally witnessed him stealing, Anderson did not report Williams to AutoZone's loss prevention department.[24] Anderson claims to have reported her suspicion that Williams was stealing to the regional manager, Janessa "Jay" Lowery.[25]  Lowery, as a corporate representative for AutoZone, testified that an employee would not be terminated for a suspicion of theft without a proper investigation, but a suspicion of theft would result in due diligence from a store manager and an investigation of the findings by the regional manager.[26]  If Lowery actually received reports of theft by Kevin Williams from Anderson based on Anderson's testimony, then Lowery herself did nothing to punish (or even investigate) Williams for theft.[27]  Since Kevin Williams was never investigated for suspicions of theft or even reported to loss prevention, despite Ware reporting it to Anderson and Anderson allegedly discussing it with Lowery, Anderson and Lowery were clearly not concerned about a male employee stealing from AutoZone.[28]

---

[23] ROA.428-429.

[24] ROA.413; ROA.429-430.

[25] ROA.430

[26] ROA.536.

[27] ROA.514-515.

[28] ROA.412-413; ROA.429-430; ROA.514-515.

In the midst of witnessing the other part sales manager at Store 5892 steal and take merchandise off the shelf without paying, Ware found herself not being paid on time and not being paid the correct number of hours.[29]   Ware's first complaint occurred on January 7, 2020, which is when she should have received her first check.[30] Ware was told that she would be paid for her training in the next pay period.[31]  Alas, the next pay period came on went on January 18, 2020, but Ware did not receive pay for all of the hours she worked.[32]   According to Anderson, Ware complained every day about her paycheck issue.[33]

Derrick Martin, AutoZone's Regional Human Resources Manager, admitted to the errors in Ware's paycheck that caused her to go without pay for almost a month, but he refused to recognize anyone specific to blame.[34] When questioned about the individual responsible for this hardship on Ware, Laura Berry, the alleged ultimate decisionmaker and "rubber stamp",[35] testified under oath as AutoZone's second corporate that Anderson had nothing to do with it and not at fault in any way.[36]  However, a text message from Derrick Martin to John Flores on January 28,

---

[29] ROA.739-740.
[30] ROA.739.
[31] ROA.740.
[32] ROA.740.
[33] ROA.768.
[34] ROA.132-134.
[35] ROA.536.
[36] ROA.540-541.

2020, reveals that Laura Berry's testimony was a lie; "Rosy" [Rosalind] Anderson, the same manager that told Ware she did not want other females working in her store, was to blame for the issues with Ware's paycheck.[37]

### B. Ware Borrows and Returns a Battery to Get to Work After Witnessing a Male Employee Steal Without Repercussion.

On Saturday, January 18, 2020, the same day she expected to receive pay for two weeks' worth of hours but did not, Ware had car issues that caused her to be late to work.[38]  When she arrived that morning, Ware requested to use a loaner battery and was given permission to do so by Kevin Williams.[39]  Ware also called and informed Anderson the same day that she borrowed the battery from the store with Kevin Williams's permission, which Anderson had no qualms about.[40]  It was only after Ware sent a fax to AutoZone's payroll department did Anderson have a problem with Ware borrowing and returning a battery on January 18, 2020.[41]  Naturally, when asked in her deposition if Ware called and said Kevin Williams authorized her to use the battery, Anderson's response was, "I don't remember."[42]

Ware indeed used the battery that the veteran part sales manager directed her to, used it to get her car to work, and then returned the battery where she found it

---

[37] ROA.621-622; ROA.809.
[38] ROA.642-643.
[39] ROA.709-711.
[40] *Id.*
[41] ROA.709-711; ROA.739; ROA.811.
[42] ROA.785.

over the course of 45 minutes.[43]  In hindsight, Ware would have been able to buy her own car battery with a 20% employee discount using the money in her paycheck on that January 18 payday.[44]  It is too bad that AutoZone shorted Ware's pay for over a week's worth of her hours on a day her car broke down.[45]  Unfortunately, the perfect storm caused by Anderson was about to get worse for Ware.

### C.     The Case of the Missing Paycheck and the Not Missing Battery

No one at AutoZone seemed to care that Kevin Williams was stealing things off the shelf,[46] and no one at AutoZone seemed to care either that Ware was not being paid on time and being paid for all the hours she worked.  However, when Ware escalated the issue and put everyone at AutoZone on notice of her complaint, AutoZone seemed to be so surprised that someone with bills to pay and kids to feed would be angry about not being paid.[47]  Jay Lowery testified that she remembered Echo Ware and her complaint about her untimely paycheck "vividly."[48]  Of course, AutoZone did not fire Ware for being rude, disrespectful, or "screaming" at anyone.[49]

---

[43] ROA.715.
[44] *See* ROA.198.
[45] ROA.132-133.
[46] ROA.412-413; ROA.429-430; ROA.514-515.
[47] *See* ROA.510.
[48] *Id*.
[49] ROA.540.

The following week on Wednesday, January 22, 2020, after almost a month of not receiving a paycheck, Ware sent a fax to AutoZone's payroll department complaining about her untimely check missing hours.[50] That same day, Rosalind Anderson called loss prevention and reported Ware for "stealing a battery."[51] However, at the time Anderson called and reported Ware for "stealing a battery," the battery was in the store.[52]

Anderson's and Lowery's actual concern for the "stolen" battery is more than questionable. Anderson contacted loss prevention four days after the fact on January 22, 2020, which was a Wednesday.[53] It is fair to say that two of those four days in the delay can be attributed to the fact that Anderson was not scheduled to work on Saturday, January 18, 2020.[54] However, Anderson was scheduled to work that following Monday (January 20) and Tuesday (January 21), but she waited until Ware faxed payroll with her continued paycheck complaint to initiate an investigation.[55]

**D.    Echo Ware is Terminated for "Causing a Monetary Loss" to AutoZone**

After working a month for AutoZone without a paycheck for all the hours she worked, with a broken means of transportation and mouths to feed at home, Echo

---

[50] ROA.811.
[51] ROA.738-739; ROA.768-769.
[52] ROA.768-769; ROA.784.
[53] ROA.768-769.
[54] ROA.769.
[55] ROA.781.

Ware was terminated on February 1, 2020, just ten days after Ware's faxed complaint about her paycheck to AutoZone's payroll department.[56]

In his sworn declaration, Derrick Martin in Human Resources testified to the wrong termination date[57] and then testified that he made the recommendation to Laura Berry to terminate Ware.[58]  However, the audit trail in AutoZone's Loss Prevention department's "investigation" file shows that Martin went in retroactively and "made the recommendation" to fire Ware on February 12, 2020, a week after she had already been terminated.[59]  Moreover, the audit trail on the "Corrective Action Review Form" for the battery incident shows that the one who submitted "termination" as the "suggested area of improvement" and "action to be taken" on January 31, 2020, was none other than Janessa Lowery: the regional manager that "vividly" remembered Ware and her paycheck complaint but ignored alleged reports from Anderson of the male part sales manager stealing from the store.[60]  The Corrective Action Review Form shows that Derrick Martin approved Lowery's submission within hours, but nowhere on the form does it show Laura Berry's name as the ultimate decision maker or someone who even "approved" the termination.[61]

---

[56] ROA.239; ROA.512.
[57] *See* ROA.131; *c.f.* ROA.134; ROA.533.
[58] ROA.132.
[59] ROA.240.
[60] ROA.243; *see also* ROA.412-413; ROA.429-430; ROA.510; ROA.514-515.
[61] ROA.243.

In fact, the only "evidence" of Derrick Martin allegedly recommending termination to anyone is his back-dated entry in the loss prevention file that he made almost two weeks after AutoZone fired Ware.[62]  Laura Berry was good for one thing: admitting for AutoZone that they were only concerned about Ware taking the battery that causes a "monetary loss"; otherwise, AutoZone is not concerned about it.[63]

In an attempt to corroborate Laura Berry's deposition testimony (on AutoZone's behalf) that the company was only concerned with the policy violation by Ware removing the battery from the store because it caused a "monetary loss,"[64] Derrick Martin further testified in his sworn declaration that Ware's removal of the battery "caused a loss" to AutoZone.[65]  However, AutoZone's own summary judgment evidence that Martin attested to as reliable "business records" show that the battery was recovered, the entire value of the merchandise was recovered, and the total loss to this multi-billion dollar company was zero dollars.[66]  The very same documents that Martin attest to as "true and correct" are the very same documents that expose him and Laura Berry lying under oath about the circumstances of Ware's termination.[67]

---

[62] ROA.240.
[63] ROA.539-540.
[64] ROA.539-540.
[65] ROA.132.
[66] ROA.239.
[67] *See id.*

To continue the myriad of falsehoods under penalty of perjury, Derrick Martin also testified that it was AutoZoners, LLC, that terminated Ware.[68]  However, according to Laura Berry, the alleged final decisionmaker, Autozone, Incorporated is the actual entity that terminated Ware.[69] According to Autozoners, LLC, distinguishing between Autozone, Inc. and Autozoners, LLC, for purposes of Ware's termination, is "splitting hairs."[70]  Regardless of how AutoZone wants to split hairs to avoid liability, two AutoZone managers clearly rejoiced at Ware's termination: 1) Anderson, who did not like other females working in her store and had to listen to Ware complain daily about her paycheck;[71] and 2) Jay Lowery, who remembers Echo Ware's paycheck issue "vividly," and how Ware "screamed" about not getting paid.[72]  Derrick Martin in Human Resources surely rejoiced as well, since he too dealt with Ware's paycheck complaints and was willing to lie under oath for AutoZone over the circumstances of her termination.[73]

Sadly, Echo Ware had no idea that she was being fired at the beginning of the COVID-19 pandemic with lasting effects stretching over the course of two years.

---

[68] ROA.129; ROA.131.
[69] ROA.533-534.
[70] *Id.*
[71] ROA.605; ROA.622-623; ROA.768.
[72] ROA.510.
[73] ROA.129-131.

## IV.    SUMMARY OF THE ARGUMENT

In this case, the issue is not whether Echo Ware removed a battery from the store to drive her broken-down vehicle to work.  Nor is there a question of whether borrowing the battery was a violation of AutoZone's policy.  The question is whether AutoZone's reason for terminating Ware was a pretext for discriminatory and/or retaliatory intent.  AutoZone's corporate representative admitted in her deposition that it was not a *per se* policy violation the company was ever concerned with; AutoZone alleges ultimately that Ware's act caused "a monetary loss" that resulted in her termination—which the human resources manager then parroted in a sworn declaration.  In the same breath, AutoZone's own records show there was no monetary loss, exposing Berry and Martin as liars.

A reasonable juror could review the overwhelming evidence, including: AutoZone's dishonesty; Anderson's comment on Ware's first day expressing disdain for other female employees; evidence that Anderson's report to loss prevention of the returned battery happened only after Ware had engaged in FLSA-protected activity; evidence that there was no monetary loss to AutoZone; and evidence that both of the female managers over Ware pardoned Kevin Williams for *actual* theft to conclude that Ware was discriminated against and retaliated against.

Put    simply,    despite    AutoZone's    formal    articulated    legitimate nondiscriminatory/nonretaliatory   reason   for   terminating   Ware   was   for   "the

unauthorized removal" of a car battery, the evidence shows that Ware was not terminated for borrowing a battery and then returning it; a reasonable juror could reach the conclusion that Anderson wanted Ware fired because she did not like other females in the store, threatening her status as "Queen Bee," and AutoZone's higher-ups agreed with the sentiment that Ware needed to be canned for the trouble she caused by engaging in protected activity under the FLSA.

The district court erred by ignoring all Ware's evidence and instead finding no pretext because "the unauthorized removal of store property is a terminable offense [according to the handbook], whether or not it caused a monetary loss."[74] The district court's rationale for granting AutoZone's motion for summary judgment is substantively concluding that employment discrimination plaintiffs loses their right to a jury trial if the employer merely articulates a legitimate nondiscriminatory reason for termination.   It is not surprising that employers generally do not admit willingly to unlawful motives or discriminatory animus.  But, as the Supreme Court commented before Title VII's enactment, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n.17 (1957).

---

[74] ROA.1427.

# V.    ARGUMENT

The district court correctly found that Ware had established a prima facie case for FLSA retaliation.[75]  However, the district court erred by finding that Ware could not establish a prima facie case for Title VII sex discrimination and could not establish pretext for Title VII discrimination or FLSA retaliation.[76]  Thus, this appeal focuses on Ware's prima facie case of sex discrimination under Title VII and Ware's evidence of pretext for under both Title VII and FLSA.

## A.    Standard of Review

This Court reviews a district court's grant of summary judgment de novo, viewing all the facts and evidence in the light most favorable to the non-movant. *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id*. at 255.

---

[75] ROA.1423-1424.
[76] ROA.1415-1422; ROA.1424-1428.

As the Supreme Court has long recognized, summary judgment procedures are to be used sparingly in cases:

> ...[w]here motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of even-handed justice.

*Fortner Enterprises, Inc. v. U.S. Steel Corporation*, 394 U.S. 495, 500 (1969); *see also Turco v. Hoechst Celanese Chemical Group, Inc.*, 906 F. Supp. 1120, 1126-27 (S.D. Tex. 1995) *aff'd sub nom*, 101 F.3d 1090 (5th Cir. 1996)  (Summary judgment should not be granted "upon the issue of legitimate reasons or pretext, as resolving such issues invariably involves assessments of evidentiary credibility and weight."); *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987)  (observing that "summary judgment is ill-suited for credibility determinations" and "[i]t is likewise an inadequate procedure for sorting out nebulous questions of motivation").

## B.    Ware's Claim Title VII Gender Discrimination

### 1.    *"I don't like other females working in my store."*

This Court has previously determined that discriminatory remarks are probative of discriminatory intent, so long as they are not the only evidence of pretext. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003). As discussed further below, Anderson's comment against other females working in her store is not the only evidence of pretext in this case, rendering it probative of

discriminatory intent. A reasonable juror could determine based on the timing of this gender-based comment made to Ware on her first day (when Anderson discovered the new employee was another female) and Anderson's dishonest testimony that she was motivated by gender animus to treat Ware less favorably than a male comparator and "get rid of her" at the first chance she got. *See e.g. Chambers v. Sodexo, Inc.*, 510 F. App'x 336, 338 (5th Cir. 2013) (reversing summary judgment for the employer in an age discrimination claim, concluding that a jury could infer that a general manager of a restaurant was motivated by age because her poor treatment of an older executive chef began just after she discovered his age); *see also Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996) (holding that a company president's instruction to human resources officials that he did not want to hire older workers constitutes sufficient material evidence of age discrimination); *Portis v. First Nat'l Bank*, 34 F.3d 325 (5th Cir. 1994) (holding that a supervisor's statement to a female subordinate that she "wouldn't be worth as much as the men would be to the bank" constituted direct evidence of sex discrimination).

The district court did not dismiss Anderson's comment as unrelated to gender animus; the district court erred by rejecting the cat's paw theory because there was no evidence that Anderson had influence or "leverage" over the decision to terminate Ware.[77] The Supreme Court held that "if a supervisor performs an act motivated by

---

[77] ROA.1413.

[unlawful] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v. Proctor Hosp.,* 562 U.S. 411, 422 (2011) (footnote omitted). As discussed below, the extent of Anderson's "leverage" that began with her call to loss prevention is a question for a jury.

### 2.    *Anderson's Leverage Over Ware's Termination Is A Jury Question.*

Ware raised evidence of gender-based remarks by Anderson, her immediate supervisor, but the district court erred by disregarding this probative evidence.[78] Notwithstanding, the district court pointed out that there is no clear test for what constitutes "influence" or "leverage."[79] The ultimate question of fact is whether "'the employee can demonstrate that others had influence or leverage over the official decisionmaker.'" *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2001)). The influence or leverage that was motivated by discriminatory animus must be a "proximate cause" of the ultimate employment decision. *See Staub*, 562 U.S. at 421; *see also Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 172 (5th Cir. 2014). "The degree to which [the final decisionmaker's] decisions were based on his own independent investigation is a question of fact..." *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996). *See also Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002).

---

[78] *Id.*

[79] *Id.*

In, *Palasota*, this Court reversed a district court's grant of judgment as a matter of law in an age discrimination case, explaining, "[a]ge-related remarks 'are appropriately taken into account when analyzing the evidence...,' even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." 342 F.3d at 578  (quoting *Russell*, 235 F.3d at 229).

In *Zamora v. City of Houston*, 798 F.3d 326 (5th Cir. 2015), the Court found that there was sufficient evidence to show that the suspension of an officer of the Houston Police Department violated Title VII.  Evidence suggested that the plaintiff's supervisors, who made negative statements about the plaintiff's credibility and reputation after the plaintiff joined a lawsuit, were retaliatory in nature. *Id*. at 334. The city argued that even if the supervisors were motivated by retaliatory animus, they were not the cause of the plaintiff's suspension. *Id*.   But the Court found those making the decision to suspend the plaintiff relied on the statements from the supervisors and that there was no independent investigation, which meant that the supervisors' retaliatory statements were a proximate cause of the plaintiff's adverse employment action. *Id*. at 334-35.

In this case, when questioned whether Ware's borrowing and returning the battery would have reached Laura Berry if Anderson had not initiated the process by allegedly reporting it to Lowery, AutoZone's answer was "probably not."[80]   A

---

[80] ROA.538.

reasonable juror could consider that Ware would not have been terminated for borrowing the battery without Anderson escalating it, since there is no other possible superseding cause that would have triggered a loss prevention investigation for the battery that caused no monetary loss to AutoZone.

Going further, even if a juror would believe that it was Lowery who contacted loss prevention first, and if Anderson is to be believed when she testified that she reported her suspicion of Kevin Williams stealing to Lowery, who then did nothing, then Lowery is also guilty of Title VII violations for disparate treatment based on gender (as well as having retaliatory motives).[81]  Regardless of "who's on first," a reasonable juror could conclude that either Anderson's gender animus (with her gender-based comment) *or* Lowery's favorable treatment of a male (with her disregard of an alleged report of theft suspicion from Anderson) led to Ware's termination. *See Alviar v. Macy's, Inc.*, 784 F. App'x 213, 221 (5th Cir. 2019).

### 3.    *Kevin Williams Was a Proper Comparator to Show Disparate Treatment.*

The district court erred in its analysis of Ware's prima facie case of Title VII sex discrimination and at the pretext stage for her Title VII claim and FLSA retaliation claim by disregarding evidence of disparate treatment based on the conclusion that Kevin Williams's conduct was not "nearly identical."[82]

---

[81] *See* ROA.412-413; *see also* ROA.429-430; ROA.514-515.
[82] ROA.1418.

Nearly identical circumstances exist "where the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). It is undisputed that Echo Ware and Kevin Williams shared the same job title, the same job responsibilities, and the same supervisor.[83]  The district court's primary rationale was that "no one claimed to have seen Mr. Williams take any property from the store."[84]  However, the district court failed to consider evidence that Ware herself witnessed Kevin Williams stealing from the store and then reported it to Anderson.[85] The district further erred by reasoning that Williams is an improper comparator because "there was no confession of theft by Kevin Williams."[86]  This conclusion is erroneous because without anyone ever conducting an investigation, contacting loss prevention, or simply asking Williams point blank if he was stealing, there is nothing for him to confess to.[87]  The disparate treatment lies in the fact that there is no disciplinary history of Kevin Williams to compare because he was not punished for theft or even investigated for his conduct after his female coworker reported it and his boss suspected it.[88]

---

[83] ROA.506-507; ROA.766.
[84] ROA.1418.
[85] ROA.412-413.
[86] ROA.1418.
[87] ROA.429.
[88] *See* ROA.412-413; ROA.429-430; ROA.514-515.

This Court has emphasized that "nearly identical is not synonymous with identical." *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 235 (5th Cir. 2015) (citing *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (internal quotation marks omitted)). In fact, this Court has previously determined that "whether two employees are 'similarly situated' generally presents a question of fact for the jury." *Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 89 (5th Cir. 2019) (referencing *Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*, 395 F.3d 206, 214-15 (5th Cir. 2004)).

Even without the disciplinary history of Kevin Williams, upon considering the testimony of Anderson "suspecting" (at the very least) Williams of committing theft, Ware's testimony that she witnessed Williams stealing, and evidence that Williams remained employed without so much as an inquiry,[89] a reasonable juror could determine that he is a proper comparator. Thus, a genuine dispute of material fact precluded summary judgment for AutoZone. *See Wallace*, 777 F. App'x at 88.

## C.   Ware Has Presented a Genuine Dispute of Material Fact as to Pretext under Title VII and the FLSA.

To establish pretext, "the plaintiff must substantiate h[er] claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Ware "must rebut each non[-]discriminatory reason articulated by [AutoZone]." *Laxton v. Gap,*

---

[89] *See id*.

*Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)  (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).  Ware must rebut each reason by "produc[ing] substantial evidence of pretext." *Wallace*, 271 F.3d at 220  (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)).  "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men [or women] in the exercise of impartial judgment might reach different conclusions." *Laxton*, 333 F.3d at 579 (citation and quotation marks omitted).  Ware can establish pretext by (1) showing disparate treatment *or* by (2) showing that AutoZone's proffered explanation is false or unworthy of credence. *Id*. at 578 (citing *Wallace*, 271 F.3d at 220); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637-40 (5th Cir. 2011).

It must be made clear that the crux of Ware's appeal is not disputing the fact that Ware borrowed a battery from the store.  Nor is Ware raising a question of the black-letter interpretation of AutoZone's handbook.  The dispute of material fact lies in whether the reason for termination was a pretext for the real reason— discriminatory or retaliatory motive; it is not whether AutoZone's proffered reason was an "incorrect reason" to discharge an employee.  *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002); *see also Laxton*, 333 F.3d at 580 n.2 ("[A] plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action.") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000))).

There is evidence here that a reasonable juror could conclude that the "violation of company policy" from borrowing a car battery to get to work—while still being a terminable offense—is not the real reason AutoZone fired Ware. AutoZone admitted that they were not concerned about a *per se* violation, but rather that the effect of the violation "caused a monetary loss" to AutoZone.[90]  This is analogous to *Laxton*, where the employer's proffered legitimate nondiscriminatory reason for termination was not for the policy violations themselves, but the "cumulative effect" of the violations. *See Laxton*, 333 F.3d at 580.  The Court in *Laxton* held that the employee succeeded in casting doubt on the employer's proffered justification in two ways: by challenging the substance of the violations (*i.e.*, evidence demonstrating falsity), and by bringing other evidence that undermined the overall credibility of the employer's proffered justification. *See id*.

Here, just like in *Laxton*, Ware has challenged the substance of AutoZone's proffered justification and provided other evidence of the overall lack of credibility of AutoZone's proffered justification.  AutoZone's own records reveal there was no monetary loss AutoZone, and AutoZone's own summary judgment testimony can be cross-referenced with the exhibits attested to—without the necessity of a rebuttal from Ware—and exposed as perjurious.

---

[90] ROA.539-540.

### 1.     A Violation of Company Policy Is Not Automatically "Worthy of Credence"

"An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action.' *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 899). Importantly, when analyzing whether a proffered reason for termination is pretext under the lens of it being "false or unworthy of credence," the question has never been whether the employee's act or low performance factually occurred; this contention distorts the inquiry. "The issue for the district court (and this court on appeal) is not whether [Ware] did, in fact, violate [AutoZone's] policy, but whether [AutoZone] used the alleged violation as a pretext for discrimination." *Ramirez v. City of Odessa, Texas*, 38 F.3d 570 n. 2 (5th Cir. 1994).

### 2.     Evidence of AutoZone's Lack of Credibility

In *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571 (5th Cir. 2020), *as revised* (Aug. 14, 2020), the Court considered what quantity of evidence is needed to survive summary judgment at the pretext stage for a Title VII retaliation claim. Ultimately, the Court in *Brown* affirmed summary judgment for the employer, primarily because the plaintiff did not provide any evidence to undermine the credibility of the individual that recommended his termination. *See Brown*, 969 F.3d at 578. But here, there is overwhelming evidence of dishonesty that rises to a level of perjury from at least *three* of AutoZone's witnesses, including Derrick Martin, the individual that allegedly made the recommendation to terminate Ware.

### a.     *Derrick Martin Lied in His Sworn Declaration.*

In Derrick Martin's declaration made under penalty of perjury, he testified that he had read all of the "investigation" file carefully and that Ware "had violated AutoZone policy by removing a new and unused battery from the store, using it for personal reasons, and causing a loss to AutoZone."[91]  Yet, the investigation file that Martin swore he thoroughly read makes clear that the *entire* cost of the battery was recovered, and the loss to AutoZone for Ware borrowing a loaner battery was zero dollars.[92]  It is clear that Derrick Martin either intentionally lied about reading the investigation file (which a reasonable juror might conclude indicates he had nothing to do with Ware's termination and was just another "rubber stamp" like Laura Berry), or Derrick Martin intentionally lied about Ware "causing a loss to AutoZone."  Whichever avenue a juror might consider for Martin's rationale for his dishonest testimony to the district court, AutoZone cannot excuse the fact that Martin lied about the circumstances of Ware's termination in his sworn testimony.

According to the audit trail of the loss prevention investigation, Derrick Martin also "recommended" Ware's termination on February 12, 2020, the week *after* AutoZone fired her.[93]

---

[91] ROA.132.

[92] ROA.239.

[93] *See* ROA.132; *C.f.* ROA.240.

### b.    *AutoZone's Corporate Representative Laura Berry Also Lied in Her Deposition.*

Martin was not the only witness from AutoZone that lied under oath. Laura Berry, as AutoZone's corporate representative, also lied when it was her turn to testify under Rule 30(b)(6) of the Federal Rules of Civil Procedure. As a primary example, Berry lied about Anderson's culpability in Ware's check being late.[94] Berry also lied about having knowledge of Ware's FLSA-protected activity, which AutoZone then paraded in its motion for summary judgment out of necessity because her testimony bound the corporation.[95] However the district court noted that the record made clear Berry *did* have knowledge of Ware's FLSA-protected activity.[96] A reasonable juror might assess Berry's lack of credibility and the absence of any reference on Ware's termination documents to conclude she is either lying about having knowledge of Ware's protected activity to hide her own retaliatory animus, or Laura Berry is simply a human shield to deflect the discriminatory/retaliatory animus of everyone else involved from being imputed to AutoZone.

### c.    *Rosalind Anderson Lied in Her Deposition.*

Last, but not least, the store manager that told Echo Ware she did not like other females working in her store joins the list of AutoZone witnesses that lied

---

[94] ROA.540-541; *C.f.* ROA.621-622; ROA.809.
[95] ROA.91; ROA.124; *C.f.* ROA.541-542.
[96] ROA.1424.

under oath in this case.  Without even considering that she denied making the comment that "she did not like other females working in her store," Anderson was caught backpedaling about her being the one who contacted loss prevention after admitting to it at the very beginning her deposition.[97]  However, after likely remembering her lawyer's coaching beforehand, Anderson tried to change her story to match AutoZone's narrative.  A reasonable juror could assess Anderson's lack of credibility and conclude that she also lied about reporting her "suspicion" that Kevin Williams was stealing from the store.  A juror might even conclude that Anderson had more than a "suspicion" of Kevin Williams stealing and, rather, had actual knowledge of Kevin Williams stealing but looked the other way.  The Court must allow a juror to reach a conclusion about AutoZone's untruthful testimony one way or another.  An employer's dishonesty under oath should not be excused or rewarded with a victory at the summary judgment stage.

### 3.    *A Similarly Situated Employee Violated the Same Work Rule Without Being Punished or Investigated.*

Where the defendant demonstrates that the plaintiff was discharged for violation of a work rule, the plaintiff can still show pretext, even if she violated a work rule, by showing other employees who engaged in similar acts were not punished similarly.  *See Kebiro v. Denton State Sch.*, 24 F.3d 240 (5th Cir. 1994)

---

[97] *See* ROA.768-769.

(citing *Green v. Armstrong Rubber Co.,* 612 F.2d 967 (5th Cir. 1980)). As explained in section V.B.3., *supra*, Kevin Williams was a proper comparator that was not punished or even asked about his theft from the store, despite Ware seeing it for herself and reporting it to Anderson. This disparate treatment of Ware alone creates a genuine dispute of material fact that goes to the ultimate issue: whether AutoZone's true intent was to discriminate and retaliate against Ware. *See Watkins v. Tregre*, 997 F.3d 275, 286 (5th Cir. 2021).

### 4.     *Timing is Everything.*

As if AutoZone's lax attitude of Kevin Williams stealing is not enough to allow Ware to have a jury trial, the fact that Ware's use and return of the "stolen" battery occurred only after Ware had escalated her FLSA-protected activity[98] is probative evidence of pretext. In *Watkins*, while the Court held that the disparate treatment was alone sufficient to create a fact issue for pretext for the plaintiff's Title VII race discrimination claim, the Court also found strong evidence of pretext for her FMLA retaliation claim when the boss initially tried to rely on events that had occurred before receiving a doctor's note and did not make any issue of before. *See Watkins*, 997 F.3d at 286. *Watkins* is analogous here, because the evidence shows that everyone involved in the case of the returned battery had knowledge of Ware's protected activity before the "investigation" was initiated, and the temporal

---

[98] ROA.739.

proximity between the time that Ware sent a fax to AutoZone to the time Anderson contacted loss prevention about the battery was on the same day.[99]  The temporal proximity between the time of Ware's protected activity and the report to loss prevention being on the same day is a red flag.  Thus, a fact issue of pretext exists for Ware's FLSA retaliation claim. *Watkins*, 997 F.3d at 285.

> ### 5.   *A Reasonable Juror Could Definitely Infer Pretext for Title VII Discrimination and FLSA Retaliation.*

A reasonable juror could reach the conclusion that in the case of the "not missing battery," AutoZone's justification for firing Ware was pretextual.   A reasonable juror could reach the conclusion that if Ware had not complained about her paycheck being wrong and untimely, or if Anderson did not mind that another female worked in her store at the time, Ware would have simply been coached with an expectation to pay for the battery with her employee discount instead of being reported for theft and fired the week after she borrowed and returned a car battery she needed to get to work.  A reasonable juror might consider that a nonretaliatory employer would overlook an employee borrowing and then returning a battery from the store to drive her broken vehicle to work; likely because without being paid, the employee could not afford it.  A reasonable juror could reach the conclusion that the territorial supervisor and self-proclaimed "Queen Bee" wanted the other female in

---

[99] *See* ROA.738-739; *see also* ROA.768-769; ROA.809.

the store gone, and the higher-paid upper management was so offended by the outrage of a low-level employee—desperate to be paid for the hours she worked—that they decided to fire her under the guise that she is a common thief.

To be clear, AutoZone's admission that it was only concerned about its policy when there is a monetary loss, coupled with the evidence that AutoZone suffered no loss, is *not* evidence that negates Ware violated a handbook policy. AutoZone's admission is evidence of the discriminatory and retaliatory *intent* behind terminating Ware. A good reason joined with one discriminatory reason creates at least a fact issue on whether the decision to terminate an employee was a pretext for discrimination or motivated in part by discrimination. *See Alviar*, 784 F. App'x at 219.

Ware, indeed, made a rookie mistake that constitutes an AutoZone policy violation. Yet, all of the evidence Ware presented of AutoZone's justification for firing her is enough for a reasonable juror to find that the policy violation was not AutoZone's real reason for terminating Ware. *Vaughn*, 665 F.3d at 639 ("A jury could draw inferences from th[e] evidence and reasonably conclude that [the defendant] intentionally exaggerated its concern over [the plaintiff's] 'unsatisfactory' conduct and that her workplace comments were not the real reason she was fired.").

As a final note, Ware is not asking the Court to transform into a human resources manager. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th

Cir. 2022).   The Court need only recognize that with the evidence of pretext presented and the testimony from AutoZone's multiple dishonest witnesses, a jury must decide what the company's true intentions were.   As the Court stated in *Watkins*, "[t]his conclusion does not mean that [the plaintiff] will prevail at trial; it means only that [the plaintiff] has produced enough evidence to survive summary judgment…and is entitled to proceed further."   *Watkins*, 997 F.3d at 286.

## VI.   CONCLUSION

For all of the foregoing reasons, the district court's grant of AutoZone's motion for summary judgment should be reversed.

SUBMITTED BY:

*s/Connor Throckmorton*
Connor Throckmorton
Throckmorton Law Firm PLLC
5850 San Felipe Street, Suite 500
Houston, Texas 77057
Phone:       (713) 400-6173
Email:       connor@throckmortonlaw.com
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk.

<div style="margin-left:40%">

*s/Connor Throckmorton*
Connor Throckmorton
Throckmorton Law Firm PLLC
5850 San Felipe Street, Suite 500
Houston, Texas 77057
Phone:        (713) 400-6173
Email:        connor@throckmortonlaw.com
**ATTORNEY FOR APPELLANT**

</div>

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 35(b)(2)(A) because this brief contains <u>7,023</u> words, excluding the parts of the brief exempted by FED. R. APP. P. 32.

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2013 in 14-point font size in Times New Roman.

<u>*s/Connor Throckmorton*</u>
Connor Throckmorton
Throckmorton Law Firm PLLC
5850 San Felipe Street, Suite 500
Houston, Texas 77057
Phone:     (713) 400-6173
Email:     connor@throckmortonlaw.com
**Attorney for Appellant**